JAMES C. MACDONALD (Bar No. 175760)
LAW OFFICES OF JAMES C. MACDONALD
2030 Main Street, Suite 660
Irvine, CA 92614
Telephone: (949) 660-0011
Facsimile: (949) 408-1743
E-mail: jcm@jcmacdonald.com

Attorneys for Plaintiffs
GBS LINENS, INC., a California Corporation, and
TMF Holdings, LLC, a California Limited Liability
Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GBS LINENS, INC., a California Corporation, and TMF Holdings, LLC, a California Limited Liability Company

Plaintiffs,

vs.

BECKMAN INSTRUMENTS, INC., a California Corporation; SMITHKLINE CALIFORNIA CORPORATION, a California Corporation; SMITHKLINE CORPORATION, a Pennsylvania Corporation; BII DELAWARE, INC., a Delaware Corporation; BECKMAN INSTRUMENTS, INC., a Delaware Corporation; BECKMAN COULTER, INC., a Delaware Corporation; CALIFORNIA COMPUTER PRODUCTS, INC., a California Corporation; SANDERS ASSOCIATES, INC., a Delaware Corporation; LOCKHEED SANDERS, INC., a Delaware Corporation; LOCKHEED MARTIN CORPORATION, a Maryland Corporation; BAE SYSTEMS NORTH

**CASE NO.: 8:23-cv-367**

**COMPLAINT FOR:**

**(1) COST RECOVERY (CERCLA - 42 U.S.C. § 9607 ET SEQ.);**
**(2) CONTRIBUTION (CERCLA - 42 U.S.C. § 9613 ET SEQ.);**
**(3) STRICT LIABILITY (RCRA-42 U.S.C. § 6972);**
**(4) COST RECOVERY AND CONTRIBUTION (HSAA – CAL. HEALTH AND SAFETY CODE § 25300, ET SEQ.);**
**(5) CONTINUING PUBLIC NUISANCE;**
**(6) CONTINUING PRIVATE NUISANCE;**
**(7) NUISANCE PER SE;**
**(8) TRESPASS;**
**(9) EQUITABLE INDEMNITY; AND**
**(10) DECLARATORY RELIEF (STATE AND FEDERAL)**

**DEMAND FOR JURY TRIAL**

AMERICA INC., a Delaware Corporation; BAE SYSTEMS SANDERS, INC., a Delaware Corporation; BAE SYSTEMS INFORMATION AND ELECTRONIC SYSTEMS INTEGRATION, INC., a Delaware Corporation; ANACONDA ELECTRONICS COMPANY, a Delaware corporation; ANACONDA WIRE AND CABLE COMPANY, a Delaware corporation; THE ANACONDA COMPANY, a Montana corporation; ATLANTIC RICHFIELD COMPANY, a Delaware corporation; BP PRODUCTS NORTH AMERICA INC., a Maryland Corporation; BP WEST COAST PRODUCTS, LLC, a Delaware Limited Liability Company; MULLER HOLDING AND INVESTMENT CO., a business entity of unknown type; ESTATE OF WALTER MULLER, on behalf of FRANK MULLER (deceased); ESTATE OF MARGARET MULLER, on behalf of MARGARET MULLER (deceased); ESTATE OF FRANK MULLER, on behalf of FRANK MULLER (deceased); MULLER ENTERPRISES, a business entity of unknown type; ESTATE OF GEORGE E. COULT, on behalf of GEORGE E. COULT (deceased); MARLENE J. COULT; RUSS E. HATLE, an Individual; LORRAINE LOUISE HATLE, an Individual; ESTATE OF ALFRED B. LIPPITT, on behalf of ALFRED B. LIPPITT (deceased); ROSALYN M. LIPPITT, an Individual; MULLER PROPERTIES, a business entity of unknown type; BEAUJAY CORPORATION, a California Corporation; ESTATE OF BERNARD

M. SHAPIRO, on behalf of BERNARD M. SHAPIRO (deceased); ESTATE OF IRIS C. SHAPIRO, on behalf of IRIS C. SHAPIRO (deceased); and, DOES 1-10.

Defendants.

Plaintiffs GBS Linens, Inc., a California Corporation ("GBS") and TMF Holdings, LLC, a California Limited Liability Company ("TMF") (GBS and TMF will hereafter be referred to collectively as "Plaintiffs"), allege TMF is the legal owner of the real property located at 305 N Muller St, Anaheim, Ca 92801 ("Impacted Site"), and GBS is the tenant at the Impacted Site, and further allege as follows:

**JURISDICTIONAL ALLEGATIONS**

1. This court has jurisdiction over this subject matter because federal questions exist pursuant to 42 U.S.C. §§ 9607 and 9613 et seq. ("CERCLA).

2. Venue is proper in this district under 28 U.S.C. § 1391(b) because the claims arise at the Impacted Site which is real property that is located within the boundaries of this court's jurisdiction. Plaintiffs are the current owners the Impacted Site.

3. This court has jurisdiction to hear the state law and common law claims brought because they arise out of the same common nucleus of facts, acts and occurrences as the federal questions presented. Furthermore, considerations of judicial economy, convenience and fairness to the parties require the claims be tried together in one jurisdictional proceeding.

**PARTY ALLEGATIONS**

4. **Beckman Operator Defendants**. Plaintiffs allege the following Defendants operated at the Impacted Site from approximately 1957 through approximately 1963, or are successors-in-interest to those operators, (parties identified

as Defendants in Paragraphs 5 – 10 shall be referred to collectively as "the Beckman Operator Defendants"):

5. Defendant BECKMAN INSTRUMENTS, INC., is a California Corporation ("BECKMAN") that operated at the Impacted Site from approximately 1957 through approximately 1963.

6. Defendant SMITHKLINE CALIFORNIA CORPORATION, is a California Corporation which is alleged to be a successor-in-interest to BECKMAN and on that basis is alleged to have operated at the Impacted Site from approximately 1957 through approximately 1963.

7. Defendant SMITHKLINE CORPORATION is a Pennsylvania Corporation which is alleged to be a successor-in-interest to BECKMAN and on that basis is alleged to have operated at the Impacted Site from approximately 1957 through approximately 1963.

8. Defendant BII DELAWARE, INC. is a Delaware Corporation which is alleged to be a successor-in-interest to BECKMAN and on that basis is alleged to have operated at the Impacted Site from approximately 1957 through approximately 1963.

9. Defendant BECKMAN INSTRUMENTS, INC. is a Delaware Corporation which is alleged to be a successor-in-interest to BECKMAN and on that basis is alleged to have operated at the Impacted Site from approximately 1957 through approximately 1963 as a successor-in-interest to BECKMAN.

10. Defendant BECKMAN COULTER, INC. is a Delaware Corporation which is alleged to be a successor-in-interest to BECKMAN and on that basis is alleged to have operated at the Impacted Site from approximately 1957 through approximately 1963.

11. Plaintiffs allege upon information and belief Beckman (Corporation Corporate No. 0160602) was incorporated in California on November 26, 1934. Plaintiffs allege Beckman was the first operator at the Impacted Site after the property was developed, and operated from at least 1957 through approximately 1963.

12. Plaintiffs allege upon information and belief, on March 4,1982, after Beckman had already vacated the site, Smithkline California Corporation ("Smithkline California") merged into Beckman pursuant to an agreement between Smithkline California and its parent Smithkline Corporation, a Pennsylvania Corporation.

13. Plaintiffs allege upon information and belief on or about July 11, 1988 BII Delaware Inc., a Delaware Corporation ("BII") Corporation No. 1618679 was incorporated. Plaintiffs further allege on information and belief on or about July 25, 1988 Beckman was merged into BII. Plaintiffs further allege upon information and belief, through operation of this merger BII assumed all of the liabilities of Beckman. Upon information and belief, pursuant to that merger, BII's name was also changed back to Beckman Instruments, Inc. ("Beckman II"). Plaintiffs further allege upon information and belief, BII Beckman II was a Delaware corporation.

14. Plaintiffs allege upon information and belief, on April 24, 1998 Beckman II's name was then changed to Beckman Coulter, Inc. ("Beckman Coulter"). Plaintiffs allege name changes of a corporation do not affect the liabilities of the corporation known by the prior name so long as the liabilities of the corporation were already merged into the corporation before the name change occurred, as Plaintiffs allege occurred here.

15. Plaintiffs allege upon information and belief Beckman Coulter, Inc. is now headquartered in Brea California and currently still an operating company, and is the current entity that has legal responsibility for Beckman's liabilities as its successor-in interest to Beckman, and that the entities within this chain of succession also retain responsibility for Beckman's liabilities.

16. **CalComp Operator Defendants.** Plaintiffs allege the following persons and entities operated at the Impacted Site, from at least 1963 through approximately 1971, or are successors-in-interest to those operators, (parties identified as Defendants in Paragraphs 17 – 23 shall be referred to collectively as "the CalComp Operator

Defendants")

17. Defendant CALIFORNIA COMPUTER PRODUCTS, INC. ("CALCOMP") is a California Corporation which Plaintiffs allege operated at the Impacted Site from at least 1963 through approximately 1971.

18. Defendant SANDERS ASSOCIATES, INC. is a Delaware Corporation which Plaintiffs allege to be a successor-in-interest to CALCOMP and on that basis is alleged to have operated at the Impacted Site from at least 1963 through approximately 1971.

19. Defendant LOCKHEED SANDERS, INC. ("Lockheed Sanders") is a Delaware Corporation which Plaintiffs allege to be a successor-in-interest to CALCOMP and on that basis is alleged to have operated at the Impacted Site from at least 1963 through approximately 1971.

20. Defendant LOCKHEED MARTIN CORPORATION ("Lockheed Martin") is a Maryland Corporation which is alleged to be a successor-in-interest to CALCOMP and on that basis is alleged to have operated at the Impacted Site from at least 1963 through approximately 1971.

21. Defendant BAE SYSTEMS NORTH AMERICA INC. ("BAE") is a Delaware Corporation which is alleged to be a successor-in-interest to CALCOMP and on that basis is alleged to have operated at the Impacted Site from at least 1963 through approximately 1971.

22. Defendant BAE SYSTEMS SANDERS, INC. is a Delaware Corporation which is alleged to be a successor-in-interest to CALCOMP and on that basis is alleged to have operated at the Impacted Site from at least 1963 through approximately 1971.

23. Defendant BAE SYSTEMS INFORMATION AND ELECTRONIC SYSTEMS INTEGRATION, INC. ("BAE Systems") is a Delaware Corporation which is alleged to be a successor-in-interest to CALCOMP and on that basis is alleged to have operated at the Impacted Site from at least 1963 through

approximately 1971.

24. Plaintiffs allege upon information and belief Calcomp is Corporation No. 0360345 and was incorporated in California in 1958. Plaintiffs allege upon information and belief, CalComp began operating at the Impacted Site at least by 1963 until at least 1970.

25. Plaintiffs allege upon information and belief, in February of 1980, after CalComp had already vacated the site, Lockheed Sanders acquired 100% of Sanders Associates, Inc., and on November 7, 1983 CalComp was liquidated and all of CalComp's assets and liabilities were transferred to and assumed by Lockheed Sanders through a merger.

26. Plaintiffs allege upon information and belief, in 2000, BAE purchased Lockheed Sanders from Lockheed Martin. Plaintiffs allege upon information and belief, Lockheed Sanders was at that time a division of Lockheed Martin. Plaintiffs allege upon information and belief, Lockheed Sanders, as a result of the acquisition and subsequent events and name changes, is now BAE Systems and was formerly known as BAE Systems Sanders, Inc.

27. Plaintiffs allege upon information and belief, as part of the 2000 purchase an indemnification provision was included in the purchase agreement which required either Lockheed Sanders, or BAE Systems, or both, to accept responsibility for CalComp's liabilities as successors-in-interest to that liability.

28. **Anaconda Operator Defendants.** Plaintiffs allege the following entities operated at the Impacted Site from at least 1971 through at least 1979, or are successors-in-interest to those operators and all named Defendants will related to these operations (parties identified as Defendants in Paragraphs 29 - 34 shall be referred to collectively as "the Anaconda Operator Defendants").

29. Defendant ANACONDA ELECTRONICS COMPANY ("ANACONDA ELECTRONICS") is a Delaware corporation which operated at the Impacted Site from at least 1971 through at least 1979.

30. Defendant ANACONDA WIRE AND CABLE COMPANY ("ANACONDA WIRE") is a Delaware corporation which operated at the Impacted Site from at least 1971 through at least 1979.

31. Defendant THE ANACONDA COMPANY, is a Montana corporation which is alleged to be a successor-in-interest to ANACONDA ELECTRONICS and ANACONDA ELECTRONICS and on that basis is alleged to have operated at the Impacted Site from at least 1971 through at least 1979.

32. Defendant ATLANTIC RICHFIELD COMPANY is a Delaware corporation which is alleged to be a successor-in-interest to ANACONDA ELECTRONICS and ANACONDA ELECTRONICS and on that basis is alleged to have operated at the Impacted Site from at least 1971 through at least 1979.

33. Defendant BP PRODUCTS NORTH AMERICA INC. is a Maryland Corporation which is alleged to be a successor-in-interest to ANACONDA ELECTRONICS and ANACONDA ELECTRONICS and on that basis is alleged to have operated at the Impacted Site from at least 1971 through at least 1979.

34. Defendant BP WEST COAST PRODUCTS, LLC which is alleged to be a successor-in-interest to ANACONDA ELECTRONICS and ANACONDA ELECTRONICS and on that basis is alleged to have operated at the Impacted Site from at least 1971 through at least 1979.

35. ERICSSON, INC. is a Delaware Corporation which other named Defendants have alleged to be a successor-in-interest to ANACONDA ELECTRONICS and ANACONDA ELECTRONICS, and on that basis upon information and belief Plaintiffs allege to have operated at the Impacted Site from at least 1971 through at least 1979. ERICSSON, INC. is not currently a named defendant. However, in the event upon the expiration of the 90 day notice period required by RCRA, Ericsson, Inc. has not agreed to resolve the claims against it as alleged in the RCRA Notice it received, Plaintiffs will file an amended complaint to name ERICSSON, INC. as a Defendant in this action.

36. Plaintiffs allege upon information and belief Anaconda Electronics was a Delaware corporation, and was a wholly owned subsidiary of Anaconda Wire, which was also a Delaware corporation. Plaintiffs allege upon information and belief Anaconda Wire was in turn a wholly owned subsidiary of The Anaconda Company, a Montana corporation. Plaintiffs allege upon information and belief Anaconda Electronics was primarily in the business of producing community television equipment with its principal offices in California. Plaintiffs allege upon information and belief Anaconda Wire was primarily in the business of manufacturing products derived from copper and had its sales offices and manufacturing plants in California.

37. Plaintiffs allege upon information and belief that Anaconda Electronics and Anaconda Wire operated at the Impacted Site. Plaintiffs allege upon information and belief, on or around January 1, 1973, Anaconda Wire and Anaconda Electronics were merged into The Anaconda Company and became a division of The Anaconda Company. Plaintiffs allege upon information and belief, The Anaconda Company assumed all liabilities of the Anaconda Wire and Anaconda Electronics. Plaintiffs allege upon information and belief, on or around January 12, 1977, The Anaconda Company merged into the Anaconda Delaware Corporation, and subsequently, the Anaconda Delaware Company merged into Atlantic Richfield Delaware Corporation. Plaintiffs allege upon information and belief, in each merger, the surviving company (with ultimate survivor Atlantic Richfield-Delaware), assumed the liabilities of the company merged into it. Plaintiffs allege upon information and belief, after the mergers, Atlantic Richfield Delaware Corporation changed its name to The Anaconda Company.

38. Plaintiffs allege upon information and belief, on July 25, 1980, Anaconda-Holdings, Inc. was funded with contributions from The Anaconda Company, Atlantic Richfield Company and Telefonaktiebolaget L M Ericsson. Plaintiffs allege upon information and belief Anaconda-Holdings, Inc. was structured as a joint holding of Atlantic Richfield Company and Telefonaktiebolaget L M

Ericsson, with each holding 50% of the company. Plaintiffs allege upon information and belief, as part of the agreement, Anaconda-Holdings, Inc. assumed certain liabilities of the prior Anaconda operations, with each of the joint owners agreeing to pay liabilities of Anaconda-Holdings, Inc. if Anaconda-Holdings, Inc. could not.

39. Plaintiffs allege upon information and belief, following the transaction, Anaconda Holdings, Inc. changed its name to Anaconda-Ericsson, Inc. Plaintiffs allege upon information and belief, on December 31, 1981, The Anaconda Company merged into Atlantic Richfield Company, and Atlantic Richfield Company assumed all liabilities of The Anaconda Company.

40. Plaintiffs allege upon information and belief, on Nov. 19, 1985, Atlantic Richfield Company sold all of its stock in the Ericsson entities to Telefonaktiebolaget L M Ericsson. Plaintiffs allege upon information and belief, Anaconda-Ericsson, Inc. became a wholly owned subsidiary of Ericsson, Inc., a U.S. subsidiary of the Swedish company Telefonaktiebolaget L M Ericsson, which upon information and belief assumed certain of both Anaconda Electronics and Anaconda Wire's liabilities. As a result of these transactions, upon information and belief Plaintiffs allege both Atlantic Richfield Company and Ericsson, Inc. are the successors in interest to both Anaconda Electronics and Anaconda Wire's liabilities.

41. Plaintiffs allege Upon information and belief, BP West Coast Products, LLC, a Delaware Limited Liability Company ("BP West"), is the successor in interest to Atlantic Richfield Company's liabilities. Plaintiffs allege upon information and belief effective December 31, 2019, BP West was merged into its parent company, BP Products North America Inc., a Maryland Corporation, and BP Products North America Inc. is the surviving entity and the successor-by-merger to BP West, and in turn to Anaconda Electronics and Anaconda Wire's liabilities.

42. **Owner Defendants.** Plaintiffs allege the following persons and entities and held ownership interest in the Impacted Site during a portion of the period from approximately 1957 through at least 1979 when BECKMAN, CALCOMP,

ANACONDA ELECTRONICS and ANACONDA WIRE operated at the Impacted Property (parties identified as Defendants in Paragraphs 43 - 57 shall be referred to collectively "the Owner Defendants"):

43. Defendant MULLER HOLDING AND INVESTMENT CO. is a business entity of unknown type which owned the Impacted Site from 1957 to 1963 and was the owner during Beckman's operations and potentially CalComp's operations.

44. Defendant ESTATE OF WALTER MULLER, on behalf of WALTER MULLER (deceased) through Walter Muller's ownership or capacity as an officer or director of MULLER HOLDING AND INVESTMENT CO. which owned the Impacted Site from 1957 to 1963 and was the owner during Beckman's operations and potentially CalComp's operations.

45. Defendant ESTATE OF MARGARET MULLER, on behalf of MARGARET MULLER (deceased through transfer of WALTER MULLER interest in MULLER HOLDING AND INVESTMENT CO. at death of WALTER MULLER which owned the Impacted Site from 1957 to 1963 and was the owner during Beckman's operations and potentially CalComp's operations.

46. Defendant ESTATE OF FRANK MULLER, on behalf of FRANK MULLER (deceased) through Walter Muller's ownership of the Impacted Site in 1963 through 1973 through direct ownership and potentially through ownership and control of MULLER ENTERPRISES as an owner during Beckman's operations and CalComp's operations.

47. Defendant MULLER ENTERPRISES, a business entity of unknown type through ownership of the Impacted Site from 1963 through 1973 during Beckman's operations and CalComp's operations.

48. Defendant ESTATE OF GEORGE E. COULT, on behalf of GEORGE E. COULT and husband of Marlene J. Coult (deceased) through ownership of the Impacted Site from 1973 through 1977 during Anaconda operations.

49. Defendant MARLENE J. COULT, an Individual and wife of George E.

Coult through ownership of the Impacted Site from 1973 through 1977 during Anaconda operations.

50. Defendant RUSS E. HATLE, an Individual and husband of Marlene J. Coult through ownership of the Impacted Site in 1973 during Anaconda operations.

51. Defendant LORRAINE LOUISE HATLE, an Individual and wife of Russ E. Hatle through ownership of the Impacted Site in 1973 during Anaconda operations.

52. Defendant ESTATE OF ALFRED B. LIPPITT, on behalf of ALFRED B. LIPPITT (deceased) through ownership of the Impacted Site in 1973 through 1977 during Anaconda operations.

53. Defendant ROSALYN M. LIPPITT, an Individual and wife of Alfred B. Lippitt through ownership of the Impacted Site in 1973 through 1977 during Anaconda operations.

54. MULLER PROPERTIES, a business entity of unknown type through ownership of the Impacted Site in 1977 during Anaconda operations.

55. BEAUJAY CORPORATION, a California Corporation through ownership of the Impacted Site in 1977 during Anaconda operations.

56. Defendant ESTATE OF BERNARD M. SHAPIRO, on behalf of BERNARD M. SHAPIRO (deceased) through ownership of the Impacted Site in 1977 through 1979 during Anaconda operations.

57. Defendant ESTATE OF IRIS C. SHAPIRO, on behalf of IRIS C. SHAPIRO (deceased) through ownership of the Impacted Site in 1977 through 1979 during Anaconda operations.

58. The Calcomp Operator Defendants, the Beckman Operator Defendants, the Anaconda Operator Defendants and the Owner Defendants and Does 1-10 hereafter shall be referred to collectively as the "the Defendants".

## FACTUAL ALLEGATIONS

59. Plaintiffs allege from 1957 to approximately 1979 the Defendants, and

each of them, stored and used, allowed the storage and use, or authorized the storage and use of liquid, solid and hazardous wastes, including but not limited to: Perchloroethylene ("PCE"); Trichloroethene ("TCE"); 1,1-Dichloroethene (1,1-DCE); 1,2-Dichloroethane (1,2-DCA); 1,1-Dichloroethane ("1,1-DCA"); 1,1,2-Trichloroethane ("1,1,2- TCA"); Chloroform; and, other hazardous substances and wastes and other contaminants, all regulated under RCRA (hereafter referred to as "Hazardous Wastes").

60. Upon information and belief, Plaintiffs allege the Defendants, and each of them, handled these hazardous wastes in places including but not limited to: 55-gallon drums; 5-gallon pails; above ground storage tanks; fiber tanks; washing and mixing tanks; surface tanks; drums, barrels and other storage containers; sumps; surface impoundments; surface gutters; surface troughs; clarifiers; slab drains; septic tanks and lines; holding basins and other facility receptacles at the Impacted Site.

61. Plaintiffs further allege the alleged violators owned and/or operated a treatment, storage and/or disposal facility (as defined by RCRA) in that they stored and/or suddenly and accidentally disposed of liquid, solid and hazardous wastes and other contaminants in places at the Impacted Site.

62. Plaintiffs further allege in so doing, the Defendants violated permits, standards, regulations, conditions, requirements, prohibitions and/or orders pertaining to the storage and/or disposal of liquid, solid and hazardous wastes, including, without limitation, regulations pertaining to "solid" waste disposal. In turn, the activities of these entities have violated at least the following provisions of RCRA, 42 U.S.C. §§6921, 6922, 6924, 6925, 6927, 6928, 6930, 6936, 6939, 6939a, 6943, 6945, 6991, 6991(a)-(d); and 40 C.F.R. §§ 254, 257, 261.2, 262 et seq., 262.20-23, 262.30-33, 262.34(a)-(d), 262.44, 264 et seq., 265 et seq., 266.100, 268.4, 268.6, 270 et seq., 280.12 et seq.; and, all other related statutes and regulations.

63. Plaintiffs allege the Hazardous Wastes have never been removed from the Impacted Site by the Defendants, and therefore their responsibility for the

contamination continues until the present time. Plaintiffs allege that at the time these releases occurred between 1957, and the time of enactment of RCRA and CERCLA, these releases were violations of then existing statutes and regulations, including but not limited to California Civil Code §§ 3479, 3480 and 3481, California Water Code (Dickey Act (Water Code §13010, et seq., repealed 1969) and the Porter-Cologne Act (Water Code § 13020, et seq.). Further these releases continue to cause violations of existing statutes as they have not been remediated by Defendants and continue to spread on and potentially off of the Impacted Site.

64. Plaintiffs allege Defendants have handled, stored, treated, transported and/or disposed of Hazardous Wastes at the Impacted Site and potentially at adjacent impacted sites, in a manner which caused those wastes to commingle and to contaminate the soil and groundwater at, beneath and adjacent to the Impacted Site and thus caused an imminent and substantial endangerment to health or the environment.

65. Plaintiffs allege the Defendants have allowed and caused Hazardous Wastes released by them directly, and/or by their tenants, to be released and disposed onto the Impacted Site and to potentially spread off the Impacted Site. One or more of these HAZARDOUS WASTES are known carcinogen in humans. Plaintiffs allege on information and belief that carcinogenic contamination located on the Impacted Site has been identified by the regulatory agency supervising the investigation and remediation of the Impacted Site the California Department of Toxic Substance ("the DTSC") which is also directing Plaintiffs to perform its investigation and temporary remedial measures for the HAZARDOUS WASTE contamination present on the Impacted Site.

66. Plaintiffs allege upon information and belief the health effects for the elevated HAZARDOUS WASTES found beneath the Impacted Site and in the building's breathing space include eye, nose, and throat irritation; headaches, loss of coordination, nausea; damage to liver, kidney, and central nervous systems. Plaintiffs

allege some of these HAZARDOUS WASTES can cause cancer in animals and some are suspected or known to cause cancer in humans.

67. On November 17, 2022, Plaintiffs issued a Notice of Intent to Sue under the requirements set forth in §7002 of the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. §6972(b)(2)(A) to all Defendants ("RCRA Notice"). No written response has been received by Plaintiffs from any of the Defendants to the RCRA Notice other than by Defendant BP. On February 17, 2023 also issued a Second Notice of Intent to Sue to Ericsson, Inc.

68. Plaintiffs alleged they did not know, or have reason to know, about the events or claims at issue in this Complaint until September 25, 2017 when a Phase II Subsurface Investigation was conducted by AEI Consultants to evaluate then current environmental conditions at the Impacted Site. This report provided support that HAZARDOUS WASTE contamination was present in subsurface soils at the Impacted Site at that time.

69. The carcinogenic contamination detected on the Impacted Site was detected in numerous locations at concentrations significantly exceeding Environmental Protection Agency ("EPA") Regional Screening Levels (RSLs). Plaintiffs allege the RSLs represent human health risk based screening levels used by EPA and the California DTSC") to determine acceptable health risks in both residential and commercial settings. Plaintiffs allege indoor air sampling events were conducted during the period from 2018 to 2021 which identified indoor air vapor concentrations resulting from the presence of the HAZARDOUS WASTES and the results indicated that PCE and other HAZARDOUS WASTE vapor concentrations were detected above acceptable DTSC RSLs.

70. Plaintiffs allege in or about May 2019 additional soil and soil vapor sampling activities were conducted. Plaintiffs allege PCE, TCE, chloroform, acrolein, benzene, and DBCP were detected in soil vapor above acceptable vapor RSLs. Also in

May of 2019 Plaintiffs allege an emergency Sub-slab Depressurization (SSD) System was installed in May 2019 which includes 6 sub-slab vapor extraction points (EP) and 8 sub-slab vapor monitoring points (MP), which is required to operate 24 hours a day and 7 days a week to reduce the imminent and substantial endangerment to the human health of the employees and invitees to the building caused by the vapor intrusion of the HAZARDOUS WASTES located beneath the sub-slab into the building. Plaintiffs allege without the construction of this emergency remediation system, and its continuous operation, PCE, TCE, and chloroform will pose an imminent and substantial risk to the human health of the onsite occupants.

71. Plaintiffs further allege the potential imminent and substantial endangerment to human health due to vapor migration to residences located to the western portion of the Impacted Site has also been mitigated by the construction of the SSD System and its continuous operation. Plaintiffs allege upon information and belief that DTSC however will direct additional investigation to further delineate potential HAZARDOUS WASTE contamination that may have migrated from the Impacted Site to cause potential imminent and substantial endangerment to the human health of the occupants of these residences.

72. Plaintiffs allege sampling from temporary groundwater probes as directed by the DTSC and performed in March of 2022 of groundwater present beneath the Impacted Site detected PCE, TCE, 1,1-DCE and 1,2-DCA at concentrations above the California or Federal Maximum Contamination Level ("MCL"). Plaintiffs allege the federal government has set MCL's which establish permissible concentration levels for HAZARDOUS WASTE contaminants occurring in drinking water. Plaintiffs allege under information and belief that DTSC contends the presence of these HAZARDOUS WASTES in the groundwater were caused by operations performed on the Impacted Site, and that Plaintiffs will be required to perform further investigation to identify the full extent of any HAZARDOUS WASTES that have impacted the groundwater located beneath the Impacted Site. Plaintiffs allege that the presence of

these HAZARDOUS WASTES have also caused a potential imminent and substantial endangerment to human health and the environment. Although no permanent groundwater monitoring wells have been installed to date, Plaintiffs allege upon information and belief that the DTSC will direct Plaintiffs to install permanent groundwater monitoring wells as a result of the detection of the HAZARDOUS WASTE contamination detected in the groundwater.

73. Plaintiffs allege that although DTSC has assumed regulatory oversight of the Impacted Site, it has not taken sufficient follow-up enforcement action to direct the Defendants that are responsible for the presence of the HAZARDOUS WASTE contamination to investigate and/or remediate the Impacted Property or the surrounding potentially impacted residential properties. Therefore, Plaintiffs allege DTSC has improperly failed to force Defendants to remediate the contamination on the Impacted Property and has improperly failed to force Defendants to address the endangerment posed by that HAZARDOUS WASTE contamination.

74. Plaintiffs further allege that they did not learn of the specific Defendants that had caused the HAZARDOUS WASTE contamination, and/or their successors in interest, until an investigation was performed to identify those Defendants in or about July of 2022 when a detailed title search for the ownership of the property in question was provided to Plaintiffs.

75. Plaintiffs allege they are an innocent landowner, bona fide purchaser and/or contiguous landowner as defined by CERCLA, 42 U.S.C. §§ 9607(b)(3), 9601 (35)(A) and/or California Land Use and Revitalization Act of 2004 - Health & Safety Code §§25395.60 ("CLRRA"). Plaintiffs informed and believe, and based upon information and belief alleges all Defendants who owned or operated the Impacted Site, were the sole and exclusive cause of the release of Hazardous Wastes at the Impacted Site, and the damages caused by the release of those Hazardous Substances and/or Hazardous Wastes. Furthermore, Plaintiffs allege they engaged in the

appropriate inquiry before purchasing the Impacted Site as required under CERCLA. Furthermore Plaintiffs, and only Plaintiffs, have timely taken affirmative steps to investigate and eventually remediate the HAZARDOUS WASTES detected on the Impacted Site once found. As a result, Plaintiffs are entitled to prosecute their claims as Private Attorney Generals and Innocent Non-Polluting Landowners.

76. Plaintiffs are unaware of the true names and capacities, whether individual, associate, corporate or otherwise, of Defendants Does 1 through 10, inclusive, or any of them, and therefore sue Defendants, and each of them, by such fictitious names. Plaintiffs will seek leave of this court to amend the Complaint when the identities of these persons are ascertained. Plaintiffs are also informed and believes that at all relevant times, Defendants and Does 1 through 5 and 7 through 10, inclusive, and each of them were the agents, employees, and/or alter egos of the other, and in doing the things herein alleged, each defendant was acting within the scope and course of their agency and authority and was subject to and under the supervision and control of each co-defendant.

**FIRST CLAIM FOR RELIEF**

**(Claim for Cost Recovery Pursuant to § 107(a) of CERCLA against all Defendants)**

77. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 76, inclusive, and incorporate them by reference as though fully set forth herein.

78. The Impacted Site comprises a "FACILITY" within the meaning of § 101(9)(B) of CERCLA, 42 U.S.C. § 9601(9)(B) in that the Impacted Site is a “site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located”.

79. During the period from at least 1957 through 1979, Plaintiffs are informed and believe and, on that basis, allege Defendants stored at one time or another liquid or solid pollutants, HAZARDOUS WASTES as part of the operations

performed. Plaintiffs are informed and believe, on occasion the waste storage receptacles, devices, and other improvements used by Defendants in the operations suddenly and accidentally leaked so as to discharge and dispose of the liquid HAZARDOUS WASTES and other pollutants stored in them into the soil and potentially threatens the occupants of the building on the Impacted Sites, residents around the Impacted Site and groundwater at and beneath the Impacted Site and surrounding areas. Since the date Defendants' waste storage receptacles, devices and other improvements began to suddenly and accidentally leak, discharge and dispose of liquid and HAZARDOUS WASTES and other pollutants stored in them, those wastes have been disposed, discharged, released, spilled, leaked, leached, and/or migrated into the soil and groundwater at, beneath and adjacent to the Impacted Site. Thereafter, continuing to the present, said liquid and/or solid HAZARDOUS WASTES have leached, migrated and caused damage, including the pollution of the soil and potentially groundwater at, beneath and adjacent to the Impacted Site, and presents a public health and safety hazard and nuisance. These HAZARDOUS WASTES are and were "hazardous substances" within the meaning of § 101(14) of CERCLA, 42 U.S.C. § 9601(14) (hereinafter referred to as "Hazardous Substances" and/or "HAZARDOUS WASTES" as previously defined).

80. Plaintiffs are informed and believe and, on that basis, allege Defendants have handled, stored, treated, transported and/or disposed of solid and/or liquid HAZARDOUS WASTES at, and adjacent to, the Impacted Site in a manner which caused those HAZARDOUS WASTES to pollute the soil and potentially groundwater at, beneath and adjacent to the Impacted Site as to cause an imminent and substantial endangerment to health and/or the environment.

81. The leak and/or sudden and accidental spill of these and other hazardous substances from the equipment, floor drains, concrete gutters, swales, ditches, underground sumps, waste water interceptors, clarifiers, degreasers, tanks, piping, drums, barrels and containers at the FACILITY, and the resulting contamination of

surface and sub-surface soils and groundwater at the FACILITY, constitute "releases" and/or "threatened releases" of hazardous substances into the environment from a facility within the meaning of § 101(22) of CERCLA, 42 U.S.C. § 9601(22).

82. Defendants, and each of them, were the only persons or entities who performed operations on or near the FACILITY or owned the Impacted Site during the period at least 1957 to 1979, which could have or likely would have caused the types of contamination which exist at the FACILITY. The releases would not have occurred or spread but for Defendants' conduct.

83. As a result of releases onto and migration of the Hazardous Substances onto the Impacted Site, Plaintiffs have incurred response costs, including the costs of investigating, characterizing, and supervising the abatement of releases and/or threatened releases of Hazardous Substances from the FACILITY, as set forth above, within the meaning of §§ 101 (23) and (25) of CERCLA, 42 U.S.C. §§ 9601 (23) and (25) in that Plaintiffs have performed "such actions as may be necessary to monitor, assess, and evaluate the release or threatened release of hazardous substances". Plaintiffs further allege that activities to implement the removal and/or remedial action are temporary in nature, are still ongoing and have not yet been completed, and will not be completed until such time as the DTSC or some other regulatory governmental agency directs a permanent solution to be implemented and in turn issues a No Further Action Letter for the Impacted Site after implementation and completion of those remedial actions.

84. Plaintiffs have incurred response costs in a manner not inconsistent with and/or substantially in compliance with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300 through the involvement of DTSC in supervision of the investigation and remediation efforts.

85. Plaintiffs, solely on the basis of being owners of the Impacted Site where releases of HAZARDOUS WASTES are located, are obligated by DTSC to incur removal and remedial costs (as those terms are defined by CERCLA 42 U.S.C.

§ 9601(23) and (24)) in the future to comply with CERCLA 42 U.S.C. § 9607, et seq. and the government directives referenced above. Plaintiffs further allege that they are in the process of conducting removal and/or remedial actions as defined by CERCLA through 40 CFR § 300.5 to reduce Defendants' releases which have caused an immediate threat to human health and the environment.

86. Defendants, and each of them, and as either operators or owners of the Impacted Site, were owners and/or operators of the FACILITY at times when Hazardous Substances were disposed of, released and/or spread, and are therefore liable to Plaintiffs, and therefore are "Responsible Persons" pursuant to CERCLA 42 U.S.C. § 9601(20).

87. Defendants are therefore responsible for all removal, remedial action, and "Response Costs" pursuant to §§ 107(a) (1) and/or (2) of CERCLA, 42 U.S.C. §§ 9607(a)(1) and/or (2).

88. Pursuant to § 107(a) of CERCLA, 42 U.S.C. § 9607(a), Plaintiffs are entitled to a declaratory judgment that each Defendant is liable to Plaintiffs for cost recovery in this and any subsequent action brought by Plaintiffs to recover past, present, and future costs or damages incurred in response to the release and/or threatened release of hazardous substances at and from the FACILITY, including, without limitation, any oversight, response, containment, assessment, analytical and/or remedial costs incurred in response to the releases and/or threatened release of hazardous substances at and from the FACILITY.

89. Plaintiffs allege Hazardous Substances released by Defendants are not divisible from the Hazardous Substances released by any other Co-Defendant (to the extent that more than one Defendant has released or spread Hazardous Substances) and therefore allocation among Defendants is not appropriate. Furthermore, Plaintiffs allege all equitable factors applicable for determination of allocation weigh in favor of Plaintiffs and, therefore all damages relating to Hazardous Substance releases caused by one or more of the Defendants should be allocated to Defendants during any

allocation stage of the litigation.

90. Pursuant to § 107(a) of CERCLA, 42 U.S.C. § 9607(a), Plaintiffs further allege Defendants are jointly and severally liable to Plaintiffs for all past, present and future costs incurred in response to the releases and/or threatened release of hazardous substances at and from the FACILITY.

## SECOND CLAIM FOR RELIEF

**(Claim for Contribution Pursuant to § 113(f) of CERCLA Against all Defendants)**

91. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 90, inclusive, and incorporate them by reference as though fully set forth.

92. Defendants, and each of them, were the only persons or entities that owned and/or performed operations and/or handled or allowed Hazardous Substances to spread on or near the Impacted Site during the period from at least 1957 through 1979 which could have, or likely would have, caused the type of contamination which exists on the Impacted Site. The contaminant releases could not, and would not, have occurred but for Defendants' negligent conduct.

93. Pursuant to § 113(f) of CERCLA, 42 U.S.C. § 9613(f), Plaintiffs are entitled to a declaratory judgment that each Defendant is liable to Plaintiffs for contribution in this and any subsequent action brought by Plaintiffs to recover past, present, and future costs or damages incurred in response to the release and/or threatened release of hazardous substances at and from the Impacted Site, including, without limitation, any oversight response, containment, assessment, analytical and/or remedial costs incurred in response to the release and/or threatened release of hazardous substances at and from the FACILITY.

## THIRD CLAIM FOR RELIEF

**(For Relief under 42 U.S.C. § 6972(a)(1)(B) - “RCRA" Against All Defendants)**

94. Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 93, inclusive, and incorporate them by reference as though fully set forth.

95. Pursuant to the notification requirements set forth in RCRA, Plaintiffs have undertaken to notify all Defendants of the intention to file this lawsuit by issuing the RCRA Notice as described above. This RCRA Notice was issued more than 90 days before filing of this Complaint and copies of the United States Postal Service return receipts for Defendants that returned their return receipts have been collected and retained to demonstrate Defendants have received notice of Plaintiffs' intention to file this lawsuit.

96. Plaintiffs have issued a second RCRA Notice to an entity named Ericsson, Inc. based on information and facts learned after issuance of the initial RCRA Notice. As a result, Ericsson, Inc. has not been named as a Defendant in the Complaint. However, if, as is the case for the named Defendants, Ericsson, Inc. refuses to avoid the naming of it in this Complaint as a defendant by complying with its joint and several responsibility to investigate and remediate the HAZARDOUS WASTE contamination present at the Impacted Site, Plaintiffs will file a First Amended Complaint to name Ericsson, Inc. as a defendant.

97. As more fully set forth herein above, Defendants were operators and/or owners of various equipment, buildings or other improvements which performed operations at the time of the release or disposal of the contaminants found at the FACILITY which constitute a Hazardous Waste as that term is defined by RCRA, 42 U.S.C. § 6903(5)(A)(B) and the duly promulgated regulations contained in 40 C.F.R. 261 et seq.

98. Defendants, and each of them, were the only persons and/or entities that performed operations and/or handled or spread Hazardous Wastes on or near the Impacted Site during the period at least 1957 through 1979 which could, or likely would, have caused the type of HAZARDOUS WASTE resulting from Defendants' operations. Defendants also had substantial control over the carcinogenic Hazardous Wastes at the time of disposal or were otherwise actively involved in the waste

disposal process. The Hazardous Waste disposals could not, and would not, have occurred but for Defendants' negligent conduct.

99. The releases and/or disposal of Hazardous Wastes at the FACILITY have caused an imminent and/or substantial endangerment to health or the environment, by creating a health risk to: workers on the FACILITY and Impacted Site; impacts to neighboring properties; and/or potentially to groundwater in the area. These human health risks shall be increased and/or exacerbated in the event workers perform soil excavation at or around the Impacted Site, which may be required to address potential subsurface issues that could arise at the FACILITY. Furthermore, the vertical and horizontal migration of the Hazardous Wastes released by Defendants potentially endangers the drinking water supplies of a large number of the general public. This endangerment is evidenced by the fact that the HAZARDOUS WASTE at the FACILITY has the potential to migrate off-site and/or by the fact they are highly carcinogenic and significantly exceed RSLs. Hazardous Wastes contained in shallow soil also may cause imminent and substantial endangerment to human health and the environment during construction activities and to workers and visitors in the event such HAZARDOUS WASTES are not remediated. Defendants' failure and/or refusal to take corrective action while the HAZARDOUS WASTE continues to spread puts the public and the environment at risk.

100. As a matter of law, Plaintiffs are entitled to prosecute and maintain this lawsuit, to obtain injunctive relief compelling remediation of the FACILITY, directing Defendants to: take action to address the endangerments which exist; participate or take over the HAZARDOUS WASTE site investigation and clean up; pay the costs and expenses incurred by Plaintiffs as they are incurred in connection with the Impacted Site; obtain payment for environmental consulting costs for Site assessment to date; and, obtain payment of attorneys' fees pursuant to 42 U.S.C. § 6972(a)(1)(B).

101. As a matter of law, Defendants are strictly liable for all costs and expenses resulting from the releases or discharges of the hazardous wastes at the

FACILITY. As a matter of law, there is an identifiable period of time during which HAZARDOUS WASTE disposals at the FACILITY by Defendants occurred. Plaintiffs when permitted by law, has or will join as Defendants all persons who operated on the Impacted Site during the time which the HAZARDOUS WASTE occurred or was allowed to spread; therefore, Plaintiffs are entitled to prosecute this claim as a Private Attorney General. As a result, Defendants are jointly and severally liable for conducting all necessary Site remediation of releases or discharges of the Hazardous Wastes at the FACILITY relating to the areas of HAZARDOUS WASTE caused by one or more Defendants.

102. Further, as a result of Defendants' disposal of the Hazardous Wastes on the FACILITY, Plaintiffs as owners of the Impacted Site have incurred environmental consulting costs to identify and characterize the nature and extent of the HAZARDOUS WASTE caused by Defendants and each of their respective releases or disposals of Hazardous Wastes at the FACILITY.

103. The regulated HAZARDOUS WASTES described above have actually seeped into the soils and/or ground water at the FACILITY and polluted the Impacted Site. As to all Defendants, the supervising regulatory agency has not directed Defendants to investigate and/or remediate the Hazardous Wastes and therefore Plaintiffs allege at the time of filing of the RCRA Notice and this Complaint they have not adequately addressed the carcinogenic HAZARDOUS WASTE released by the Defendants and have not adequately addressed cancer related endangerment posed by that contamination.

104. The HAZARDOUS WASTES released by Defendants' and allowed to spread daily cause ongoing direct and actual harm to the Impacted Site for which remedial and preventative measures must be taken. In that regard the Defendants have allowed carcinogenic HAZARDOUS WASTE on the Impacted Site of chemicals which are highly carcinogenic and at concentrations which significantly exceed RSLs. The regulatory agencies as of this time have failed to direct the Defendants to

remediate the carcinogenic HAZARDOUS WASTES the Defendants have purposefully allowed to spread on and potentially off of the Impacted Site. The Defendants likewise have refused to remediate the carcinogenic Hazardous Wastes they have allowed to spread on the Impacted Site. As a direct and proximate result of Defendants and each of their releases and disposals of hazardous wastes at the FACILITY, Plaintiffs have been damaged and caused to incur environmental agency oversight costs in a sum not yet fully ascertained, and to be proved at the time of trial. Based on the foregoing, Plaintiffs are entitled to and hereby demands reimbursement from each Defendant for all of the costs necessary to respond to Defendants' HAZARDOUS WASTE and each of their releases or disposals of Hazardous Wastes which have injured and continue to injure the Impacted Site; Private Attorney General attorneys' fees; and, injunctive relief compelling their implementation of remedial action or assumption of remedial action already in progress.

## FOURTH CLAIM FOR RELIEF

### Cost Recovery and Contribution Pursuant to the HSAA

### (Against All Defendants)

105. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 104, inclusive and incorporate them by reference as though fully set forth.

106. The hazardous substances Accounts Act ("HSAA") identifies Defendants to be "Persons" as defined by California Health and Safety Code §§ 25319.

107. The HSAA provides Defendants are "Responsible Parties" as defined by California Health and Safety Code § 25323.5 and CERCLA 42 U.S.C. §§ 9607(a)(1), 9607(a)(2) and 9607(a)(4).

108. The HSAA provides Plaintiffs may recover from Defendant Responsible Persons their removal and/or remedial action costs incurred or to be incurred to remove and/or remedy the alleged releases or threatened releases of hazardous substances at the Impacted Site pursuant to California Health & Safety

Code § 25363(e).

109. Plaintiffs allege Defendants have released hazardous substances at the Impacted Site, and/or have equitably and/or contractually assumed liability for such releases, within the meaning of California Health and Safety Code §§ 25320-25321.

110. Plaintiffs allege they have incurred, and will continue to incur, costs to perform removal and/or remedial actions to respond to the hazardous substances released by Defendants, and/or to respond to releases that Defendants have equitably and/or contractually assumed liability for, at the Impacted Site within the meaning of California Health & Safety Code §§ 25322-25323.

111. Plaintiffs are informed and believe and thereon allege Defendants also violated: California Civil Code §§ 3479, 3480 and 3481; CERCLA, 42 U.S.C. § 9607, et seq.; RCRA, 42 U.S.C. S 6972, et seq.; California Water Code (Dickey Act (Water Code §13010, et seq., repealed 1969); Porter-Cologne Act (Water Code § 13020, et seq.), by causing and/or permitting the discharge or release of the HAZARDOUS WASTES into the environment; California Water Code § 13304(a) (which provides that "[a] person who has discharged or discharges waste into the waters of this state . . . and creates . . . a condition of pollution or nuisance"), § 13050 (m)(1), 13265(c) and (d); and 13350(b). These resulted in violations of law which in turn support liability under Plaintiffs' HSAA claim.

112. Plaintiffs allege Defendants are Responsible Persons as defined by Health and Safety Code § 25323.5 and 42 U.S.C. § 9607(a), and therefore Plaintiffs are entitled to cost recovery and contribution from Defendants pursuant to California Health and Safety Code § 25363, including but not limited to all present and future costs of HAZARDOUS WASTE investigation, remediation and attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### (For Continuing Public Nuisance against All Defendants)

113. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 112, inclusive, and incorporate them by reference as though fully set forth.

114. Defendants, and each of them, were the only persons and/or entities that owned and/or performed operations and/or handled HAZARDOUS WASTES on or near the Impacted Site. Defendants owned and/or operated the Impacted Site during the period at least 1957 through 1979. Defendants' HAZARDOUS WASTES releases could not, and likely would not, have occurred but for Defendants' negligent conduct.

115. At all material times, Defendants have allowed and permitted HAZARDOUS WASTES from the Impacted Site to leak and migrate onto and into the soil and potentially groundwater adjacent to and underlying the Impacted Site. The pollutants released by Defendants are carcinogenic and highly toxic to plant, animal and human life. The pollutants potentially create a health risk to Impacted Site workers and/or neighboring properties in the event workers perform soil excavation at the Impacted Site. Furthermore, the vertical and horizontal migration of the pollutants released by Defendants potentially endangers the drinking water supply of the general public. Defendants' failure and/or refusal to take corrective action while the HAZARDOUS WASTE continues to spread puts the public at risk.

116. Defendants' failure and/or refusal to abate the nuisance before the pollution further spreads puts a large number of the public at risk. In addition, Defendants' actions potentially affect the entire community or neighborhood, or, at a minimum, a considerable number of persons.

117. The former use and operation of the Impacted Site by Defendants constitutes a nuisance within the meaning of California Civil Code §§ 3479 and 3480. Defendants' actions are injurious to Plaintiffs' economic interests in the Impacted Site and interfere with Plaintiffs' comfortable and quiet use and enjoyment of the Impacted Site. In addition, Defendants' HAZARDOUS WASTE acts potentially affect an entire community or neighborhood, or, at a minimum, a considerable number of persons.

118. Plaintiffs have given notice to Defendants, and each of them, of the damage caused by the HAZARDOUS WASTE nuisance, and requested its abatement.

However, Defendants, and each of them, have failed and/or refused, and continue to fail and/or refuse, to abate the HAZARDOUS WASTE nuisance.

119. Defendants, and each of them, have threatened to and will, unless restrained by this court, continue to maintain the HAZARDOUS WASTE nuisance and continue the acts complained of. Each and every of Defendants' HAZARDOUS WASTE nuisance acts have been, and will be, without Plaintiffs' consent, against Plaintiffs' will, and in violation of Plaintiffs' right of quiet use and enjoyment of the Impacted Site.

120. As a proximate result of the continuing HAZARDOUS WASTE nuisance caused and maintained by the Defendants, Plaintiffs have suffered: a substantial reduction in the monetary value and marketability of the Impacted Site; potential lost rental and business income; an impaired ability to pledge the Impacted Site as security for either operating lines of credit or capital improvement loans; an impaired ability to obtain loans or financing; the requirement of employing environmental consultants to assess and potentially remediate the Impacted Site and to incur costs related thereto; potential exposure to lawsuits due to exposures from workers at the Impacted Site and/or workers exposed to HAZARDOUS WASTES that have the potential to migrate off-site; oversight costs relating to the work performed by the DTSC to direct and oversee work at the Impacted Site; and, the need to employ legal counsel and incur legal costs and attorneys' fees.

121. As a further proximate result of the continuing abatable HAZARDOUS WASTE nuisance created by Defendants, and each of them, Plaintiffs are informed and believe they will be injured and sustain damages by reason of their inability to freely use, occupy, rent, refinance, pledge, hypothecate, secure, or sell the Impacted Site.

122. The HAZARDOUS WASTE nuisance is continuing in nature and with implementation of reasonable remedial measures can be abated.

**SIXTH CLAIM FOR RELIEF**

**(For Continuing Private Nuisance against All Defendants)**

123. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 122, inclusive, and incorporate them by reference as though fully set forth.

124. Defendants, and each of them, were the only persons or entities that owned and/or performed operations and/or handled HAZARDOUS WASTES on or near the Impacted Site for the period at least 1957 through 1979. Defendants caused the type of HAZARDOUS WASTE which exists on the FACILITY. The HAZARDOUS WASTES releases could not, and likely would not, have occurred but for Defendants' negligent conduct.

125. At all material times, Defendants have allowed and permitted HAZARDOUS WASTES from the Impacted Site to leak into the soil and have the potential to migrate into groundwater adjacent to and underlying the Impacted Site. The pollutants released are carcinogenic and are highly toxic to plant, animal and human life. Furthermore, the presence of the HAZARDOUS WASTE at the Impacted Site interferes with Plaintiffs' quiet use and enjoyment of the Impacted Site. Furthermore, Plaintiffs are prevented from making full use of their real estate investment to obtain more favorable refinancing of existing loans and/or financing of new loans on the Impacted Site. Finally, Plaintiffs may lose opportunities to sell, rent the Impacted Site to prospective buyers or tenants who do not wish to perform operations at the Impacted Site which is polluted, and which potentially poses increased worker safety risks and for which the applicable regulatory agency has issued a Responsible Party Letter, and to use the Impacted Site to obtain profits from its own business operations.

126. The use and maintenance of the Impacted Site, and the Adjacent Impacted Site, by Defendants constitutes a nuisance within the meaning of § 3479 and § 3481 of the California Civil Code because it is injurious to Plaintiffs' economic interests in the Impacted Site and interferes with the comfortable and quiet use and enjoyment of the

Impacted Site.

127. Plaintiffs have given notice to Defendants, and each of them, of the damage caused by the HAZARDOUS WASTE nuisance, and requested its abatement, but Defendants, and each of them, have failed and/or refused, and continue to fail and/or refuse, to abate the HAZARDOUS WASTE nuisance.

128. Defendants, and each of them, have threatened to and will, unless restrained by this court, continue to maintain the HAZARDOUS WASTE nuisance and continue the acts complained of. Each and every HAZARDOUS WASTE nuisance act has been, and will be, without Plaintiffs' consent, against Plaintiffs' will, and in violation of Plaintiffs' right of quiet use and enjoyment of the Impacted Site.

129. As a proximate result of the continuing HAZARDOUS WASTE nuisance caused and maintained by the Defendants, Plaintiffs have suffered: a substantial reduction in the monetary value and marketability of the Impacted Site; lost rental and business income; an impaired ability to pledge the Impacted Site as security for either operating lines of credit or capital improvement loans; impaired ability to obtain loans or financing; the requirement of employing environmental consultants to assess and potentially remediate HAZARDOUS WASTE at the Impacted Site, and to incur costs related thereto; exposure to potential lawsuits; oversight costs relating to the work performed by the DTSC to direct and oversee work at the Impacted Site; and, the need to employ legal counsel and incur legal costs and attorneys' fees.

130. As a further proximate result of the continuing abatable HAZARDOUS WASTE nuisance created by Defendants, and each of them, Plaintiffs are informed and believe they will be injured and sustain damages by reason of their inability to freely use, occupy, rent, refinance, pledge, hypothecate, secure, or sell the Impacted Site.

131. The HAZARDOUS WASTE nuisance is continuing in nature and with implementation of reasonable remedial measures can be abated.

**SEVENTH CLAIM FOR RELIEF**

**(For Continuing Nuisance Per Se against All Defendants)**

132. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 131, inclusive, and incorporate them by reference as though fully set forth.

133. Defendants, and each of them, were the only persons or entities that owned and/or performed operations and/or handled HAZARDOUS WASTES on or near the Impacted Site during the period at least 1957 through 1979. Defendants caused the type of HAZARDOUS WASTE which exists at the Impacted Site. The HAZARDOUS WASTES releases could not, and likely would not, have occurred but for Defendants' negligent conduct.

134. At all material times, Defendants have allowed and permitted HAZARDOUS WASTES from the Impacted Site to leak and migrate onto and into the soil and have the potential to migrate into groundwater adjacent to and underlying the Impacted Site. The pollutants released are carcinogenic and are highly toxic to plant, animal and human life. Furthermore, the presence of the HAZARDOUS WASTE at the Impacted Site interferes with Plaintiffs' free use and enjoyment of the Impacted Site. Plaintiffs are prevented from making full use of their real estate investment to obtain more favorable refinancing of existing loans and/or financing of new loans on the Impacted Site. Finally, Plaintiffs may lose opportunities to sell or rent the Impacted Site to prospective buyers or tenants who do not wish to be involved with the Impacted Site because it is polluted.

135. The HAZARDOUS WASTES released also create a health risk to residents and workers on the Impacted Site and/or neighboring properties in the event they come into contact with such substances. Furthermore, the vertical and horizontal migration of the pollutants released by Defendants potentially endangers the drinking water supply of the general public. This danger is evidenced in part by the fact that the pollutants at the Impacted Site are carcinogenic and significantly exceed the applicable RSLs. The pollutants may have migrated through the soil to and from the Impacted Site and have the potential to migrate onto off-site properties to become a

potential threat to human health because of the exposure to others through contact with soil. Defendants' failure and/or refusal to abate the nuisance before the HAZARDOUS WASTE spreads further puts a large number of the public at risk. Plaintiffs are informed and believe and thereon allege Defendants, and each of them, in breaching their duty of care, violated certain statutes, ordinances, and/or regulations of a public entity.

136. Plaintiffs are informed and believe and thereon allege Defendants violated both CERCLA, 42 U.S.C. § 9607, et seq. and RCRA, 42 U.S.C. § 6972, et seq., by causing and/or permitting the discharge or release of hazardous substances and/or hazardous wastes into the environment.

137. Plaintiffs are informed and believe and thereon allege Defendants also violated the: California Hazardous Substance Account Act (Health & Safety Code § 25300 et seq.); Hazardous Waste Control Law (Health & Safety Code § 25100 et seq.); California Water Code (Dickey Act, Water Code § 13010, et seq., repealed 1969); Porter-Cologne Act (Water Code § 13020, et seq.); by causing and/or permitting the discharge or release of the hazardous substances and/or hazardous wastes into the environment; Proposition 65 - Safe Drinking Water and Toxic Enforcement Act of 1986; California Health and Safety Code § 25249.5, et seq.; California Health and Safety Code § 25299(a), (b), and (c), and 25189(d); California Water Code § 13304(a) (which provides that "[a] person who has discharged or discharges waste into the waters of this state . . . and creates . . . a condition of pollution or nuisance"), § 13050 (m)(1), 13265(c) and (d); and 13350(b); RCRA as alleged above in the Third Cause of Action; RCRA's corresponding State statute (Hazardous Waste Control Law (Health & Safety Code § 25100 et seq.)); and, California Civil Code §§ 3479, 3480 and 3481.

138. The Defendants have discharged and allowed to spread carcinogenic Hazardous Wastes, potentially into the waters of the state which have: (1) created a condition of pollution, or a nuisance as is defined by Water Code Section 13050(m).

Plaintiffs allege either the creation of the condition of pollution, or excessive cancer exposure, or the creation of the condition of the nuisance, is sufficient to demonstrate a violation of Water Section 13304(a) as to all Defendants. As to the creation of the condition of nuisance, the discharge of carcinogenic Hazardous Wastes, has created a condition of nuisance because each of those types of waste discharges is: (1) injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property (as demonstrated by the presence of carcinogenic arsenic concentrations on the Impacted Site that significantly exceed RSLs; (2) Affects at the same time a considerable number of persons, although the extent of the annoyance or damage inflicted upon Plaintiffs is unequal to those other persons affected (as demonstrated by the potential impacts to numerous of the Impacted Site's potential tenants' employees and visitors, and potential impacts to off-site property owners and tenants in the event the Hazardous Waste releases are to migrate off-site; and (3) Occurs during, or as a result of, the treatment or disposal of each of their wastes (as demonstrated by the Defendants' improper disposal of the carcinogenic arsenic wastes, and by their failure to properly remediate and treat the carcinogenic wastes once they disposed of them).

139. As a proximate result of Defendants' statutory violations in connection with the use and/or operation of the Impacted Site, and the leakage of Hazardous Substances and/or Hazardous Wastes into the soil on the Impacted Site, Plaintiffs incurred damages and have suffered: exposure of residents, workers, tenants and visitors to carcinogenic substances; a substantial reduction in the monetary value and marketability of the Impacted Site; an impaired ability to pledge the Impacted Site as security for either operating lines of credit or capital improvement loans; an impaired ability to obtain loans or financing; the requirement of employing environmental consultants to assess and remediate the FACILITY; impairment to potential business and rental income for the Impacted Site, oversight costs relating to the work performed by the DTSC to direct and oversee work at the Impacted Site; and to incur

costs related thereto; and, the need to employ legal counsel and incur legal costs and attorneys' fees.

140. Plaintiffs' injuries have resulted from an occurrence the nature of which the statutes, ordinances, and/or regulations specifically referred to herein were designed to prevent.

141. Plaintiffs are members of that class of persons for whose protection the statutes, ordinances, and/or regulations more specifically referred to herein were adopted to protect.

142. Defendants' violations of those statutes, ordinances, and/or regulations are unjustified and inexcusable because Defendants possessed the wherewithal to prevent the HAZARDOUS WASTES releases or discharges, or, once detected, to promptly and effectively remedy them so as to prevent prolonged exposure and injury to the environment. The HAZARDOUS WASTE nuisance is continuing in nature and with implementation of reasonable remedial measures can be abated.

**EIGHTH CLAIM FOR RELIEF**

**(For Trespass Against All Defendants)**

143. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 142, inclusive, and incorporate them by reference as though fully set forth.

144. Plaintiffs are the current owners of the Impacted Site. Defendants at all material times have been the former owners and/or operators of the Impacted Site which are either known, or suspected, to be the source of the soil HAZARDOUS WASTE.

145. Defendants by reason of their operation of the Impacted Site, have negligently and/or recklessly caused or permitted during their ownership and/or operation the release of carcinogenic HAZARDOUS WASTE into the soil and/or groundwater underlying the Impacted Site. Defendants have failed and/or refused to abate the condition they have caused and/or allowed to come onto Impacted Site.

146. Defendants have caused and/or allowed the trespass conditions to occur

without Plaintiffs' consent. As a proximate result of Defendants' negligent and/or reckless conduct, in connection with the ownership and/or operation of the Impacted Site, and the leakage of Hazardous Waste into the soil and groundwater onto the Impacted Site, Plaintiffs have been caused damages and have suffered: exposure of residents to carcinogenic substances; a substantial reduction in the monetary value and marketability of the Impacted Site; an impaired ability to pledge the Impacted Site as security for either operating lines of credit or capital improvement loans; an impaired ability to obtain loans or financing; impaired business and/or rental income; the requirement of employing environmental consultants to assess and remediate the Impacted Site, and to incur costs related thereto; oversight costs relating to the work performed by the DTSC to direct and oversee work at the Impacted Site; and, the need to employ legal counsel and incur legal costs and attorneys' fees.

**NINTH CLAIM FOR RELIEF**

**(For Equitable Indemnity**

**Against All Defendants)**

147. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 146, inclusive, and incorporate them by reference as though fully set forth.

148. The costs incurred by Plaintiffs in investigating, and to be incurred in the future when abating the conditions at the Impacted Site are and will be the result of Defendants' improper conduct and/or management of hazardous substances and/or wastes and the conditions they have caused.

149. Plaintiffs are entitled to full, or at least partial, equitable indemnity from Defendants for all costs previously incurred, and all those costs which may be incurred by Plaintiffs in the future testing for and abating the hazardous conditions at the Impacted Site in response to, and in defense of, the governmental agency environmental regulatory proceedings and Plaintiffs in the actions alleged above and any future claims brought or threatened by adjacent property owners which have had their property contaminated as a result of Defendants' releases onto the Impacted Site.

**TENTH CLAIM FOR RELIEF**

**(For State and Federal (28 U.S.C. § 2201(a) and 42 U.S.C. § 9613(g))**

**Declaratory Relief against All Defendants)**

150. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 149, inclusive, and incorporate them by reference as though fully set forth.

151. An actual controversy has arisen and now exists between Plaintiffs and Defendants in that Plaintiffs contend, and Defendants and each of them deny, responsibility for the HAZARDOUS WASTES, hazardous substances and/or hazardous wastes caused or permitted to be released into the environment at the FACILITY rests solely and entirely upon Defendants.

152. Defendants, by reason of their use and operation of the FACILITY, each had exclusive possession, custody and control of the Impacted Site during the periods of the HAZARDOUS WASTES releases.

153. In addition to Plaintiffs' state law rights declaratory relief, Plaintiffs seek federal declaratory relief under § 2201 of the Declaratory Judgment Act, 28 U.S.C. § 1331, *et seq.* relating to all Federal statutory claims asserted and independently seek declaratory relief under 42 U.S.C. § 9613(g) of CERCLA. Plaintiffs therefore request a judicial determination of rights, and a declaration of the duties and obligations of the Defendants, in responding to the alleged releases and threatened releases of HAZARDOUS WASTES into the soil, soil gas, air, surface water and/or groundwater at and from the Impacted Site.

154. A dispute and controversy exists regarding:

(a) Which persons and entities are responsible for causing HAZARDOUS WASTES at the FACILITY;

(b) Which persons and entities are responsible for Site HAZARDOUS WASTES assessment and remediation of the Impacted Site;

(c) The time period in which FACILITY HAZARDOUS WASTES remediation should occur;

(d) The appropriate means and costs for HAZARDOUS WASTES remediation of the FACILITY;

(e) The scope of the HAZARDOUS WASTES remediation of the FACILITY;

(f) The exact nature and extent of Plaintiffs' economic damages incurred;

(g) Which parties are responsible for payment of civil penalties (if any); and,

(h) Whether Plaintiffs are entitled to recover attorneys' fees.

155. Plaintiffs believe additional issues will arise requiring judicial determination as the litigation progresses. A judicial declaration is necessary and appropriate at this time in order that Plaintiffs may ascertain their rights and duties with respect to Plaintiffs' claims for damages.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS pray of this Court as follows:

**ON THE FIRST, SECOND AND FOURTH CLAIM FOR RELIEF:**

1. For Plaintiffs' Response Costs incurred, or to be incurred;

2. For all other related costs incurred herein;

3. For a declaration and/or determination Defendants are responsible for paying to and/or reimbursing Plaintiffs for all past and future costs to investigate and remediate HAZARDOUS WASTES and HAZARDOUS WASTES at the Impacted Site incurred, or to be incurred; and,

4. For attorneys' fees and costs relating to the investigation of responsible parties for the Impacted Site.

**ON THE THIRD CLAIM FOR RELIEF:**

5. For issuance of an injunctive order directing Defendants to: (1) take action to address the endangerment which exists from the HAZARDOUS WASTES and compelling Defendants to perform FACILITY HAZARDOUS WASTES

remediation; (2) take over remediation efforts undertaken by Plaintiffs; (3) pre-pay costs of remediation; and/or, (4) to pay the costs of FACILITY HAZARDOUS WASTES remediation implemented by Plaintiffs in the future, all until such time as a "No Further Action Is Required" letter for HAZARDOUS WASTES is issued by the governmental regulatory agency responsible for overseeing FACILITY remediation, with the exact nature of the injunctive order to be determined at the time of trial given the nature of the remediation efforts that are required at that time and will be required in the future after the trial is concluded;

6. For issuance of an injunctive order directing Defendants to participate in the site investigation and/or pay the costs of investigation implemented by Plaintiffs in the future until such time as a "No Further Action Is Required" letter for HAZARDOUS WASTES is issued by the governmental regulatory agency responsible for overseeing FACILITY remediation;

7. For the costs, and Site HAZARDOUS WASTES investigation related expenses, incurred by Plaintiffs in connection with the Impacted Site to date since issuance of Plaintiffs' Notice of Intent to Sue;

8. For all environmental, analytical and expert response costs; and,

9. For reasonable attorneys' fees as a Private Attorney General and all costs and fees of litigation incurred.

**ON THE FIFTH, SIXTH, SEVENTH AND EIGHTH CLAIM FOR RELIEF:**

10. For all costs of HAZARDOUS WASTES and HAZARDOUS WASTE investigation and remediation incurred within the past three (3) years of filing this lawsuit;

11. For all other related costs incurred herein within the relevant time period;

12. For issuance of an injunctive order compelling Defendants to pay for and/or to remediate HAZARDOUS WASTE on the Impacted Site; and,

13. For attorneys' fees and costs relating to the investigation of responsible

parties for the Impacted Site pursuant to California Code of Civil Procedure § 1021.5 and 1021.6 and as otherwise permitted by statute.

**ON THE NINTH CLAIM FOR RELIEF:**

22. For a determination Plaintiffs are entitled to full, or at least partial, equitable indemnity from Defendants for all costs previously incurred, and all those costs which may be incurred by Plaintiffs in the future for testing and abating the hazardous conditions at the Impacted Site in response to, and in defense of, the governmental agency environmental regulatory proceedings alleged above and any future claims brought or threatened by adjacent property owners which have had their property contaminated as a result of Defendants' releases at the Impacted Site; and,

23. For an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and 1021.6 and as otherwise permitted by statute.

**ON THE TENTH CLAIM FOR RELIEF:**

24. For a finding and declaration of the court concerning:

(a) Which persons and entities are responsible for causing Plaintiffs' damages;

(b) Which persons and entities are responsible for HAZARDOUS WASTES assessment and remediation;

(c) The time period in which Property HAZARDOUS WASTE remediation should occur;

(d) The appropriate means and costs for HAZARDOUS WASTE remediation;

(e) The scope of the HAZARDOUS WASTE remediation;

(f) The exact nature and extent of Plaintiffs' economic damages incurred;

(g) Which parties are responsible for payment of civil penalties (if any) as alleged by Plaintiffs in the Complaint; and,

(h) Whether Plaintiffs are entitled to recover attorneys' fees and

costs of litigation.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all causes of action under which it is entitled to a jury trial.

DATED: March 2, 2023 LAW OFFICES OF JAMES C. MACDONALD

By: */s/ JAMES C. MACDONALD*
JAMES C. MACDONALD